## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | **CASE NO.  19-00508-dd** |
| **AUDREY CONKLIN MORAN** | ) | **CHAPTER 7** |
| *(AKA Audrey Moran,* | ) | |
| *AKA Audrey C Moran,* | ) | **NOTICE OF MOTION FOR RELIEF** |
| *AKA Audrey Conklin-Moran)* | ) | **FROM AUTOMATIC STAY** |
| **DEBTOR** | ) | **(11 U.S.C. § 362)** |
| | ) | |

TO:  DEBTOR, TRUSTEE (if applicable), AND THOSE NAMED IN THE ATTACHED MOTION:

PLEASE TAKE NOTICE THAT a hearing will be held on the attached Motion on:

**Date:** **March 6, 2019**
**Time:**  **2:00 PM**
**Place:**  **145 King Street, Room 225, Charleston, SC 29401**

Within 14 days after service of the attached Motion, the Notice of Motion, the Movant's Certification of Facts (and a blank Certification of Facts for applicable to service on pro se parties only), any party objecting to the relief sought shall:

1)      File with the Clerk a written objection to the 11 U.S.C. § 362 Motion;

2)      File with the Clerk a Certification of Facts;

3)      Serve on the Movant items 1 & 2 above at the address shown below; and

4)      File a certificate of such with the Clerk.

If you fail to comply with this procedure, you may be denied the opportunity to appear and be heard on this proceeding before the court.

| | |
|---|---|
| DATE OF SERVICE: | February 12, 2019 |
| MOVANT: | Ocwen Loan Servicing, LLC as servicer for U.S. Bank National Association, as Trustee, successor in interest to Bank of America National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2004-6 |
| ATTORNEY: | /s/ Chad W. Burgess |
| | Chad W. Burgess, S.C. Bar No. 72520 |
| | Brock and Scott, PLLC |
| ATTORNEY'S ADDRESS: | 3800 Fernandina Road, Suite 110 |
| | Columbia, SC 29210 |
| | Phone: 803-454-3540 x 1707 |
| | scbkr@brockandscott.com |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

|  |  |  |
|---|---|---|
| IN RE: | ) | CASE NO. 19-00508-dd |
| **AUDREY CONKLIN MORAN** | ) | **CHAPTER 7** |
| *(AKA Audrey Moran,* | ) | |
| *AKA Audrey C Moran,* | ) | **MOTION FOR RELIEF** |
| *AKA Audrey Conklin-Moran)* | ) | **FROM AUTOMATIC STAY** |
| **DEBTOR** | ) | **(11 U.S.C. § 362)** |
| | ) | |

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

COMES NOW Ocwen Loan Servicing, LLC as servicer for U.S. Bank National Association, as Trustee, successor in interest to Bank of America National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2004-6 (hereinafter "Movant"), a secured creditor in the above-captioned case, by and through counsel, Brock & Scott, PLLC, and moves this Court to enter an order granting its request for relief from the automatic stay imposed by 11 U.S.C. § 362(a) on the following grounds:

1. That Ocwen Loan Servicing, LLC as servicer for U.S. Bank National Association, as Trustee, successor in interest to Bank of America National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2004-6 is a secured creditor of the Debtor and thus a party in interest.

2. That the above-captioned Debtor filed a petition seeking relief pursuant to Chapter 7 of the United States Bankruptcy Code in this District on or about January 28, 2019.

3. The Debtor holds title to the real property (hereinafter "Collateral") described in that Mortgage recorded in the Suffolk County Clerk of Court in Book M00020853 at Page 855 and recorded on September 14, 2004 (hereinafter "Mortgage") with an address of 212 Lake Avenue, St. James, New York 11780. Copies of the Mortgage and Note are attached hereto and incorporated herein as Exhibit A.

4.    Movant holds a Promissory Note secured by the Mortgage from the Debtor in the original principal amount of $341,000.00 and dated April 9, 2004 (hereinafter "Note").

5.    Movant has the right to foreclose because: Movant is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Movant, directly or through an agent, has possession of the promissory note, and the promissory note is either made payable to Movant or has been duly endorsed.

6.    The Debtor has scheduled the value of the Collateral at $498,203.00.

7.    Upon information and belief, the approximate payoff due and owing to Movant as of February 4, 2019 is $512,509.56.

8.    As a result of the averments in paragraphs 6 and 7, no equity exists in the subject property.

9.    The loan is presently in default and is due for the December 1, 2012 contractual payment.

10.   As a result, Movant lacks adequate protection of its interest in the Collateral. By virtue of such lack of protection, good cause exists to lift the automatic stay imposed hereunder. Otherwise, Movant will suffer irreparable harm with respect to Movant's interest in the Collateral.

11.   Movant agrees to waive any claim that may arise under 11 U.S.C. Section 503(b) or Section 507(b) as a result of this Order. Movant further agrees that any funds realized from the foreclosure sale, in excess of all liens, costs, and expenses, will be paid to the Trustee.


WHEREFORE, Movant respectfully requests the entry of an Order:

1.    That modifies the automatic stay provisions of 11 U.S.C. § 362 and that allows Ocwen Loan Servicing, LLC as servicer for U.S. Bank National Association, as Trustee, successor in interest to Bank of America National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2004-6 to immediately proceed to foreclose its security

interest in the property described in Exhibit A annexed to this Motion and otherwise pursue any remedies available under state law to recover and liquidate its collateral;

2.    That waives the effect of Bankruptcy Rule 4001 (a)(3); and

3.    Provides for such other and further relief as the Court deems just and proper.


This, the 12th day of February 2019.

/s/ Chad W. Burgess
Chad W. Burgess, S.C. Bar No. 72520
Brock and Scott, PLLC
3800 Fernandina Road, Suite 110
Columbia, SC 29210
Phone: 803-454-3540 x 1707
scbkr@brockandscott.com

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | CASE NO.  19-00508-dd |
| **AUDREY CONKLIN MORAN** | ) | CHAPTER 7 |
| *(AKA Audrey Moran* | ) | |
| *AKA Audrey C Moran* | ) | **CERTIFICATION OF FACTS** |
| *AKA Audrey Conklin-Moran)* | ) | |
| **DEBTOR** | | |

In the above-entitled case, in which relief is sought by Ocwen Loan Servicing, LLC as servicer for U.S. Bank National Association, as Trustee, successor in interest to Bank of America National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2004-6 from automatic stay provided by 11 U.S.C. § 362, I do hereby certify to the best of my knowledge the following:

1.   <u>Nature of Movant's Interest</u>:  Movant holds the first mortgage on property located at 212 Lake Avenue, St. James, New York 11780.

2.   <u>Brief Description of Security Agreement (copy attached)</u>:  Mortgage

3.   <u>Description of Property Encumbered by Stay (Include serial number, lot and block number, etc.)</u>:

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Saint James, in the Town of Smithtown, County of Suffolk and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Lake Avenue distant 185.8 feet 164 feet more or less (actual) South of the intersection formed by the westerly side of Lake Avenue with the southerly side of Woodlawn Avenue;

RUNNING THENCE South 4 degrees 19 minutes West, 119.64 feet along the westerly side of Lake Avenue;

THENCE North 88 degrees 01 minutes 03 seconds West, 466.58 feet;

THENCE North 4 degrees 13 minutes East, 124.12 feet to the southerly line of Lot 1520 on "Map of Saint James Park, Section B";

THENCE South 87 degrees 44 minutes 50 seconds East, 466.58 feet along said southerly line of Lot 1520 to the point or place of BEGINNING.

4.   <u>Basis for Relief</u>:  Lack of adequate protection. §362(d)(1) and (2).

5.    <u>Prior Adjudication by Other Courts, copy attached (Decree of foreclosure,
Order for possession, Levy of execution, etc., if applicable</u>:  N/A

6.    <u>Valuation of Property, copy of Valuation attached</u>:

| | |
|---|---|
| Fair Market Value | $498,203.00 |
| Senior Liens: | $0.00 |
| Movant's Lien: | $512,509.56 |
| Other Liens: | $0.00 |
| Net Equity | $0.00 |
| Source/Basis of Value | Schedule |

7.    <u>Amount of Debtor estimated equity (using figures from paragraph 6)</u>: $0.00

8.    <u>Month and Year in which first direct post-petition payment came due to Movant
(if applicable)</u>: N/A

9.    (a) <u>For Movant / Lienholder (if applicable): list or attach a list of all post-
petition payments received directly from debtor(s), clearly showing date
received, amount and month and year of which each such payment was
applied.</u>[1]

(b) <u>For Objecting party (if applicable): list or attach a list of all post-petition
payments included in the Movant's list from (a) above which objecting party
disputes as having been made. Attach written proof of such payment(s) or a
statement as to why such proof is not available at the time of filing this
objection.</u>

10.   <u>Month and year for which post-petition account of Debtor is due as of the date
of this Motion</u>: December 2012 (Contractually)
See attached payment history.

Dated: February 12, 2019

/s/ Chad W. Burgess
Chad W. Burgess, S.C. Bar No. 72520
Brock and Scott, PLLC
3800 Fernandina Road, Suite 110
Columbia, SC 29210
Phone: 803-454-3540 x 1707
scbkr@brockandscott.com

---

[1]    This requirement may not be met by the attachment of a payment history generated by the Movant. Such
attachment may be utilized as a supplement to a complete and detailed response to (9)(a) above, which should be
shown on this certification.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

|  |  |
|---|---|
| IN RE: | ) |
| **AUDREY CONKLIN MORAN** | ) |
| *(AKA Audrey Moran* | ) |
| *AKA Audrey C Moran* | ) |
| *AKA Audrey Conklin-Moran)* | ) |
| **DEBTOR** | |

**CASE NO.  19-00508-dd**
**CHAPTER 7**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that he/she is over eighteen (18) years of age and that the MOTION FOR RELIEF FROM AUTOMATIC STAY, NOTICE OF MOTION, CERTIFICATION OF FACTS, AND CERTIFICATE OF SERVICE in the above captioned case were this day served upon the below named persons by mailing, postage prepaid, first class mail a copy of such instrument to each person(s), parties, and/or counsel at the addresses shown below:

Audrey Conklin Moran
317 Simplicity Drive
Murrells Inlet, SC 29576

Jackson Turner-Vaught
9261 Highway 707
Suite H
Myrtle Beach, SC 29588

Kevin Campbell
P.O. Box 684
Mount Pleasant, SC 29465

This, the 12th day of February 2019.

Brock and Scott, PLLC

/s/ Chad W. Burgess
Chad W. Burgess, S.C. Bar No. 72520
Brock and Scott, PLLC
3800 Fernandina Road, Suite 110
Columbia, SC 29210
Phone: 803-454-3540 x 1707
scbkr@brockandscott.com

# Exhibit A

| Number of pages | **1** | **2** | |
|---|---|---|---|

TORRENS

Serial # _____

Certificate # _____

Prior Ctf. # _____

```
RECORDED
2004 Sep 14 02:40:54 PM
Edward P. Romaine
CLERK OF
SUFFOLK COUNTY
L M00020853
P 855
CV085482
```

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

| **3** | FEES | |
|---|---|---|

Page / Filing Fee _____ *33* _____

Handling _____ 5. 00

TP-584 _____ _____

Notation _____ _____

EA-52 17 (County) _____ _____    Sub Total _____ *38*

EA-5217 (State) _____ _____

R.P.T.S.A. _____ *50* —

Comm. of Ed. _____ 5. 00

Affidavit _____ _____

Certified Copy _____ _____

NYS Surcharge _____ 15. 00    Sub Total _____ *70*

Other _____ _____    Grand Total _____ *108 —N*

Mortgage Amt. *341,000* _____

1. Basic Tax _____ _____

2. Additional Tax _____ _____

Sub Total _____ _____

Spec./Assit.

or

Spec. /Add.

TOT. MTG. TAX *3385* _____

Dual Town _____ Dual County _____

Held for Appointment _____

Transfer Tax _____

Mansion Tax _____

The property covered by this mortgage is or will be improved by a one or two family dwelling only.

YES _____ / or NO _____

If NO, see appropriate tax clause on page # _____ of this instrument.

| **4** | Dist. | Section | Block | Lot | **5** | **Community Preservation Fund** |
|---|---|---|---|---|---|---|

Real Property Tax Service Agency Verification

0800 05500 0400 014000
0800 05500 0400 015000

R P T S A
16-JUN-04

Consideration Amount $ _____

CPF Tax Due    $ _____

Improved _____

Vacant Land _____

TD _____

TD _____

TD _____

| **6** | Satisfactions/Discharges/Releases List Property Owners Mailing Address |
|---|---|

**RECORD & RETURN TO:**

Alliance Mortgage Banking Corp
3001 Hempstead Tpke, Suite 305
Levittown, NY 11756

| **7** | **Title Company Information** |
|---|---|

Co. Name    RAM ABSTRACT LTD

Title # _____

| **8** | |
|---|---|

# Suffolk County Recording & Endorsement Page

This page forms part of the attached _____ Mortgage _____ made by:
(SPECIFY TYPE OF INSTRUMENT)

Audrey L Conklin
Jacqueline M Conklin

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

TO

Alliance Mortgage Banking Corp

In the Township of    Smithtown

In the VILLAGE

or HAMLET of    St. James

BOXES **6** THRU **8** MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)




## SUFFOLK COUNTY CLERK
## RECORDS OFFICE
## RECORDING PAGE

Type of Instrument: MORTGAGE/MMM          Recorded:     09/14/2004
Number of Pages: 11                       At:           02:40:54 PM
Receipt Number :
MORTGAGE NUMBER: CV085482                 LIBER:     M00020853
                                          PAGE:      855

District:           Section:          Block:            Lot:
0800                055.00            04.00             014.000
                     EXAMINED AND CHARGED AS FOLLOWS
Mortgage Amount:             $341,000.00

Received the Following Fees For Above Instrument

|  | | Exempt | | | Exempt |
|---|---|---|---|---|---|
| Page/Filing | $33.00 | NO | Handling | $5.00 | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | NO |
| Affidavit | $0.00 | NO | Cert.Copies | $0.00 | NO |
| RPT | $50.00 | NO | SCTM | $0.00 | NO |
| Mort.Basic | $1,705.00 | NO | Mort.Addl | $827.50 | NO |
| Mort.SplAddl | $0.00 | NO | Mort.SplAsst | $852.50 | NO |
|  | | | Fees Paid | $3,493.00 | |

MORTGAGE NUMBER: CV085482
            THIS PAGE IS A PART OF THE INSTRUMENT
                  THIS IS NOT A BILL

                        Edward P.Romaine
                        County Clerk, Suffolk County

KAM ABSTRACT LTD.

S: 055.00
B: 04.00
L: 014.000
    015.000

ALLIANCE MORTGAGE BANKING CORP.
3601 HEMPSTEAD TURNPIKE, SUITE 305
LEVITTOWN, NY 11756

Loan Number: ███████████
Servicing Number: ███████████

[Space Above This Line For Recording Data]

# MORTGAGE

☒    THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO FAMILY RESIDENCE OR DWELLING ONLY.

☐    THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED WITH A STRUCTURE CONTAINING SIX RESIDENTIAL UNITS OR LESS, EACH DWELLING UNIT HAVING ITS OWN COOKING FACILITIES.

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated       April 09, 2004                    , will be called the "Security Instrument."

(B) "Borrower."     AUDREY L. CONKLIN AND JACQUELINE M. CONKLIN

sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "Lender."
        ALLIANCE MORTGAGE BANKING CORP., A NEW YORK CORPORATION
will be called "Lender." Lender is a corporation or association which exists under the laws of   NEW YORK
                        . Lender's address is
        3601 HEMPSTEAD TURNPIKE, SUITE 305, LEVITTOWN, NY  11756

(D) "Note." The note signed by Borrower and dated       April 09, 2004        , will be called the "Note." The Note shows that I owe Lender   THREE HUNDRED FORTY ONE THOUSAND
    . . .AND NO/100THS       Dollars (U.S. $341,000.00        ) plus interest. I have promised to pay this debt in monthly payments and to pay the debt in full by   May 01, 2034            .

(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(F) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note;

(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at                    212    LAKE AVENUE                            ,
                                                               [Street]

        ST. JAMES                    , New York              11780-              . This Property is in
        [City]                                               [Zip Code]

                            Suffolk                County. It has the following legal description:

DSBL:800/55/4/14,15

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

**NEW YORK - Single Family**
Page 1 of 9                                                          NYD10011 (09/22/00)

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements and appurtenances attached to the Property";
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;
(F) All of the rights and property described in subparagraphs (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subparagraphs (B) through (F) of this section.

### BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY
I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### PLAIN LANGUAGE SECURITY INSTRUMENT
This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary, to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language."

COVENANTS

I promise and I agree with Lender as follows:

### 1. BORROWER'S PROMISE TO PAY
I will pay to Lender on time principal and interest due under the Note and any prepayment and late charges due under the Note.

### 2. MONTHLY PAYMENTS FOR TAXES AND INSURANCE
**(A) Borrower's Obligations**
I will pay to Lender all amounts necessary to pay for taxes, assessments, water frontage charges and other similar charges, sewer rents, leasehold payments or ground rents (if any), hazard or property insurance covering the Property, and flood insurance (if any). If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, (i) I also will pay to Lender all amounts necessary to pay for mortgage insurance, and (ii) if, under Paragraph 8 below, instead of paying for mortgage insurance I am required to pay Lender an amount equal to the cost of mortgage insurance, I will pay this amount to Lender. I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make these payments on the same day that my monthly payments of principal and interest are due under the Note.

My payments under this Paragraph 2 will be for the items listed in (i) through (vi) below, which are called "Escrow Items":
(i) The estimated yearly taxes, assessments, water frontage charges and other similar charges, and sewer rents on the Property which under the law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien";
(ii) The estimated yearly leasehold payments or ground rents on the Property (if any);
(iii) The estimated yearly premium for hazard or property insurance covering the Property;
(iv) The estimated yearly premium for flood insurance covering the Property (if any);
(v) The estimated yearly premium for mortgage insurance (if any); and
(vi) The estimated yearly amount I may be required to pay Lender under Paragraph 8 below instead of the payment of the estimated yearly premium for mortgage insurance (if any).

Lender will estimate from time to time the amount I will have to pay for Escrow Items by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless the law requires Lender to use another method for determining the amount I am to pay. The amounts that I pay to Lender for Escrow Items under this Paragraph 2 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured.

The law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender for a "federally related mortgage loan" could require me to place in an "escrow account" under the federal law called the "Real Estate Settlement Procedures Act of 1974," as that law may be amended from time to time. If there is another law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(B) Lender's Obligations**
Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills. However, Lender may charge me for these

NYD10012 (09/22/00)

services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with my loan, unless the law does not permit Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Security Instrument, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

**(C) Adjustments to the Funds**
Under the law, there is a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then the law requires Lender to account to me in a special manner for the excess amount of Funds. There will be an excess amount if, at any time, the amount of Funds which Lender is holding or keeping is greater than the amount of Funds Lender is allowed to hold under the law.

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items in full. Lender will determine the number of monthly payments I have in which to pay that additional amount, but the number of payments will not be more than twelve.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender. If, under Paragraph 21 below, Lender either acquires or sells the Property, then before the acquisition or sale, Lender will use any Funds which Lender is holding at the time of the acquisition or sale to reduce the Sums Secured.

**3. APPLICATION OF BORROWER'S PAYMENTS**
Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes: First, to pay any prepayment charges due under the Note; Next, to pay the amounts due to Lender under Paragraph 2 above; Next, to pay interest due; Next, to pay principal due; and Last, to pay any late charges due under the Note.

**4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
I will pay all taxes, assessments, water frontage charges and other similar charges, sewer rents, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so. If I make payment to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE OR PROPERTY INSURANCE**
I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage, including floods and flooding. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain the insurance coverage described above, Lender may obtain insurance coverage to protect Lender's rights in the Property in accordance with Paragraph 7 below.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

NYD10013 (09/22/00)

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 21 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

## 6. BORROWER'S OBLIGATIONS TO OCCUPY THE PROPERTY, TO MAINTAIN AND PROTECT THE PROPERTY, AND TO FULFILL ANY LEASE OBLIGATIONS; BORROWER'S LOAN APPLICATION

### (A) Borrower's Obligations to Occupy the Property

Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

### (B) Borrower's Obligations to Maintain and Protect the Property

I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate.

I will be "in default" under this Security Instrument if I fail to keep any promise or agreement made in this Security Instrument. I also will be in default under this Security Instrument if any civil or criminal action or proceeding for "forfeiture" (that is, a legal action or proceeding to require the Property, or any part of the Property, to be given up) is begun and Lender determines, in good faith, that this action or proceeding could result in a court ruling (i) that would require forfeiture of the Property or (ii) that would materially impair the lien of this Security Instrument or Lender's rights in the Property. I may correct the default by obtaining a court ruling that dismisses the legal action or proceeding, if Lender determines, in good faith, that this court ruling prevents forfeiture of my interests in the Property and also prevents any material impairment of (i) the lien created by this Security Instrument or (ii) Lender's rights in the Property. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Paragraph 18 below, even if Lender has required immediate payment in full.

### (C) Borrower's Obligations to Fulfill Any Lease Obligations

If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

### (D) Borrower's Loan Application

If, during the application process for the loan that I promise to pay under the Note, I made false or inaccurate statements to Lender about information important to Lender in determining my eligibility for the loan, Lender will treat my actions as a default under this Security Instrument. False or inaccurate statements about information important to Lender would include a misrepresentation of my intentions to occupy the Property as a principal residence. This is just one example of a false or inaccurate statement of important information. Also, if during the loan application process I failed to provide Lender with information important to Lender in determining my eligibility for the loan, Lender will treat this as a default under this Security Instrument.

## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. MORTGAGE INSURANCE

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for the mortgage insurance. If, for any reason, the mortgage insurance coverage lapses or ceases to be in effect, I will pay the premiums for substantially equivalent mortgage insurance coverage. However, the cost of this mortgage insurance coverage must be substantially equivalent to the cost to me of the previous mortgage insurance coverage, and the alternate mortgage insurer must be approved by Lender.

If substantially equivalent mortgage insurance coverage is not available, Lender will establish a "loss reserve" as a substitute for the mortgage insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly mortgage insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the mortgage insurance would have covered. Lender may choose to no longer require loss reserve payments, if mortgage insurance coverage again becomes available and is obtained. The mortgage insurance coverage must be in the amount and for the period of time required by Lender. The Lender must approve the insurance company providing the coverage.

I will pay the mortgage insurance premiums, or the loss reserve payments, until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Paragraph 2 above.

## 9. LENDER'S RIGHT TO INSPECT THE PROPERTY
Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 10. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY
A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured immediately before the taking, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is as follows: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless the law requires otherwise, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking is less than the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

## 11. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS
### (A) Borrower's Obligations
Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

### (B) Lender's Rights
Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 21 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument.

## 12. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS
Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument; and (B) that person is not personally obligated to pay the Sums Secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

Loan Number: ▮▮▮▮▮▮   Servicing Number: ▮▮▮▮▮▮   NYD 09/04

### 13. LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

### 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in subparagraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT

This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

### 16. BORROWER'S COPY

I will be given one conformed copy of the Note and of this Security Instrument.

### 17. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

### 18. BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED

Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions:

(A) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required; and
(B) I correct my failure to keep any of my other promises or agreements made in this Security Instrument; and
(C) I pay all of Lender' s reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees; and
(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

If I fulfill all of the conditions in this Paragraph 18, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraph 17 above.

### 19. NOTE HOLDER'S RIGHT TO SELL THE NOTE OR AN INTEREST IN THE NOTE; BORROWER'S RIGHT TO NOTICE OF CHANGE OF LOAN SERVICER

The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not receive any prior notice of these sales.

The entity that collects my monthly payments due under the Note and this Security Instrument is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note; there also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under Paragraph 14 above and under applicable law. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by the law.

### 20. CONTINUATION OF BORROWER'S OBLIGATIONS TO MAINTAIN AND PROTECT THE PROPERTY

The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws." I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so.

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Paragraph 20. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Laws and the substances considered hazardous for purposes of this Paragraph 20 are called "Hazardous Substances."

I will not permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property. In addition, unless the law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

If I know of any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws, I will promptly notify the Lender in writing. If the government notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

## 21. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS

Except as provided in Paragraph 17, above, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If any installment under the Note or notes, secured hereby is not paid when due, or if Borrower should be in default under any provision of this security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law.

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is know as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

## 22. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT

When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. To the extent permitted by applicable law, I will be required to pay Lender a fee for the discharge and for all costs of recording the discharge in the proper official records.

## 23. MISREPRESENTATION AND NONDISCLOSURE

Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

## 24. TIME IS OF THE ESSENCE

Time is of the essence in the performance of each provision of this Security Instrument.

## 25. WAIVER OF STATUTE OF LIMITATIONS

The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

## 26. MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender or lawful successors in interest.

## 27. REIMBURSEMENT

To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien discharge and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

**28. CLERICAL ERROR**

In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

**29. LOST STOLEN, DESTROYED OR MUTILATED SECURITY INSTRUMENT AND OTHER DOCUMENTS**

In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

**30. ASSIGNMENT OF RENTS**

As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

**31. ATTORNEYS' FEES**

As used in this Security Instrument and the note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

**32. AGREEMENTS ABOUT NEW YORK LIEN LAW**

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Paragraph 23.

**33. RIDERS TO THIS SECURITY INSTRUMENT**

If one or more riders are signed by Borrower and recorded together with this Security Instrument, the promises and agreements of each rider are incorporated as a part of this Security Instrument.
[Check applicable box(es)]

☐ Adjustable Rate Rider          ☐ Condominium Rider          ☐ 1-4 Family Rider
☐ Manufactured Home Rider          ☐ Planned Unit Development Rider          ☐ Occupancy Rider
☐ Other(s) (specify)

       BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 8 of this Security Instrument and in any rider(s) signed by me and recorded with it.

_____ (Seal)
Witness                                                    -Borrower

_____ (Seal)
Witness                                                    -Borrower

_Audrey L. Conklin_ (Seal)              _Jacqueline M. Conklin_ (Seal)
AUDREY L. CONKLIN          -Borrower          JACQUELINE M. CONKLIN          -Borrower

_____ (Seal)              _____ (Seal)
                            -Borrower                                                    -Borrower

Loan Number: ▓▓▓▓▓    Servicing Number: ▓▓▓▓▓    Page 8 of 9 9/04

## UNIFORM, ALL PURPOSE CERTIFICATE OF ACKNOWLEDGMENT
### (Within New York State)

STATE OF NEW YORK          )
County of Nassau           ) ss.:

On the 9 day of April in the year 04 before me, the undersigned, personally appeared Audrey L. Conklin Jacqueline M Conklin personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of Individual taking acknowledgement

LAURA JEAN AGOSTINO
Notary Public, State of New York
No. 01AG6051304
Qualified in Suffolk County
Commission Expires Nov. 20, 2006

## OR

## UNIFORM, ALL PURPOSE CERTIFICATE OF ACKNOWLEDGMENT
### (Outside of New York State)

State, District of Columbia, Territory, Possession or Foreign Country
                                    ) ss.:

On the ____ day of _____ in the year ____ before me, the undersigned, personally appeared _____ _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the _____.
(Insert the city or other political subdivision and the state or country or other place the acknowledgment was taken).

_____
Signature and Office of Individual taking acknowledgement

# RAM ABSTRACT, LTD.

as Agent for

**Fidelity National Title Insurance Company of New York**

### SCHEDULE A (Description)

Title Number: ▮▮▮▮▮▮

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Saint James, in the Town of Smithtown, County of Suffolk and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Lake Avenue distant 185.8 feet 164 feet more or less (actual) South of the intersection formed by the westerly side of Lake Avenue with the southerly side of Woodlawn Avenue;

RUNNING THENCE South 4 degrees 19 minutes West, 119.64 feet along the westerly side of Lake Avenue;

THENCE North 88 degrees 01 minutes 03 seconds West, 466.58 feet;

THENCE North 4 degrees 13 minutes East, 124.12 feet to the southerly line of Lot 1520 on "Map of Saint James Park, Section B";

THENCE South 87 degrees 44 minutes 50 seconds East, 466.58 feet along said southerly line of Lot 1520 to the point or place of BEGINNING.

*insue*

Recording Requested By:
**AMERICAN DOCUMENT SERVICES INC.**

And When Recorded Mail To:
**American Document Services Inc**
**250 Commerce, 2nd Floor**
**Irvine, CA  92602**

_____ Space above for Recorder's use _____



Loan#: ▮▮▮▮▮   Service# ▮▮▮▮▮   ▮▮▮▮▮▮▮▮▮▮▮      **6 3 7 - - -**

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **ALLIANCE MORTGAGE BANKING CORP, A NEW YORK CORP, 3601 HEMPSTEAD TURNPIKE SUITE 305 LEVITTOWN NY  11756-0000**. By these presents does convey, grant, bargain, sell, assign, transfer and set over to: **OPTION ONE MORTGAGE CORPORATION, 3 ADA IRVINE CA  92618-0000**. The described Mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.  Said Mortgage for  **$341,000.00**  is recorded in the State of **NEW YORK**, County of **SUFFOLK** Official Records, dated  and recorded on **SEPTEMBER 14, 2004, as Instrument No. CV085482, in Book No. M00020853, at Page No. 855.**
Original Mortgagor: **AUDREY L. CONKLIN AND JACQUELINE M. CONKLIN**.  Original Mortgagee: **ALLIANCE MORTGAGE BANKING CORP.; A NEW YORK CORPORATION.**  Property Address: **212 LAKE AVE, ST. JAMES NY 11780.  SBL# SBL:55/4/14;15.  DISTRICT# 0800.**
The assignee is not acting as a nominee of the mortgagor and that the mortgage continues to secure a bonafide obligation.
Date: **SEPTEMBER 19, 2005**
**ALLIANCE MORTGAGE BANKING CORP, A NEW YORK CORPORATION**

By: _____
(Name,Title): **SHEILA MULTER** ,  V. P.
This Assignment is not subject to the requirements of new section 275 of the real property law because it is an assignment with the secondary mortgage market.



Loan#: ▮▮▮▮▮    Srv#: ▮▮▮▮▮
Page 2

State of _New York_                          }
County of _Nassau_                          } ss.

On _9-19-05_, before me, _Angela Eddy_____, personally appeared
_Sheila Multer_____ personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned in the City of
_Levittown_
, County of _Nassau_____    State of _New York_____

Witness my hand and official seal.

ANGELA EDDY
Notary Public - State of New York
No. 01ED5080114
Qualified in Nassau County
My Commission Expires June 16 _2007_

_____
(Notary Name):

**ALLIANCE MORTGAGE BANKING CORP, A NEW YORK CORP** and officer located at **3601
HEMPSTEAD TURNPIKE SUITE 305 LEVITTOWN NY 11756-0000**

PREPARED BY: **American Document Services Inc., 250 Commerce, 2nd Floor
Irvine, CA 92602, NICHOLE SARACZEWSKI (AMER DOC)**



## SUFFOLK COUNTY CLERK
## RECORDS OFFICE
## RECORDING PAGE

Type of Instrument: ASSIGNMENT OF MORTGAGE      Recorded:   08/23/2013
Number of Pages: 3      At:         04:43:56 PM
Receipt Number : ▓▓▓▓▓▓▓

LIBER:    M00022383
PAGE:    073

| District: | Section: | Block: | Lot: |
|-----------|----------|--------|------|
| 0800 | 055.00 | 04.00 | 014.000 |

EXAMINED AND CHARGED AS FOLLOWS
Received the Following Fees For Above Instrument

| | | Exempt | | | Exempt |
|---|---|---|---|---|---|
| Page/Filing | $15.00 | NO | Handling | $20.00 | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | NO |
| Notation | $1.00 | NO | Cert.Copies | $0.00 | NO |
| RPT | $120.00 | NO | | | |
| | | | Fees Paid | $176.00 | |

THIS PAGE IS A PART OF THE INSTRUMENT
THIS IS NOT A BILL

JUDITH A. PASCALE
County Clerk, Suffolk County

| 1 | 2 |

Number of pages  3

RECORDED
2013 Aug 23 04:43:56 PM
JUDITH A. PASCALE
CLERK OF
SUFFOLK COUNTY
L M00022383
P 073

**This document will be public record. Please remove all Social Security Numbers prior to recording.**

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

| 3 | FEES |
|---|---|

| | | | | |
|---|---|---|---|---|
| Page / Filing Fee | 15 | | Mortgage Amt. | |
| Handling | 20. 00 | | 1. Basic Tax | |
| TP-584 | | | 2. Additional Tax | |
| Notation 25 | 1 | | Sub Total | |
| EA-52 17 (County) | | Sub Total | 36 | Spec./Assit. |
| | | | or | |
| EA-5217 (State) | | | Spec. /Add. | |
| R.P.T.S.A. | 120. 00 | | TOT. MTG. TAX | |
| | | | Dual Town ____ Dual County ____ | |
| Comm. of Ed. | 5. 00 | | Held for Appointment _____ | |
| Affidavit | | | Transfer Tax | |
| Certified Copy | | | Mansion Tax | |
| NYS Surcharge | 15. 00 | Sub Total | 140 | |
| Other | | Grand Total | 176. — | |

The property covered by this mortgage is or will be improved by a one or two family dwelling only.

YES ____ or NO ____

If NO, see appropriate tax clause on page # _____ of this instrument.

| | | | | |
|---|---|---|---|---|
| 4 | Dist 0800 | 2553977 | *l. Nolok A* | 5 | Community Preservation Fund |
| Real Property Tax Service Agency Verification | P T S R SM A 21-AUG-13 | | | Consideration Amount $ _____ |
| | | | | CPF Tax Due $ _____ |

Improved _____
Vacant Land _____

| 6 | Satisfactions/Discharges/Releases List Property Owners Mailing Address |
|---|---|

RECORD & RETURN TO:

Regency Process Service, LLC
761 Koehler Avenue
Suite A
Ronkonkoma, NY 11779
Telephone: 631-981-5378
Fax 631-981-4842

TD _____
TD _____
TD _____

| | Mail to: Judith A. Pascale, Suffolk County Clerk 310 Center Drive, Riverhead, NY 11901 www.suffolkcountyny.gov/clerk | 7 | Title Company Information |
|---|---|---|---|
| | | | Co. Name  *Regency Process* |
| | | | Title # _____ |

| 8 | **Suffolk County Recording & Endorsement Page** |
|---|---|

This page forms part of the attached  *Assignment of Mortgage*  made by:
(SPECIFY TYPE OF INSTRUMENT)

*Option One Mortgage Corp.*

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

TO

*US Bank, NA*

In the TOWN of  *Smithtown*
In the VILLAGE
or HAMLET of  *Saint James*

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)



Prepared by: Joe Simmons
When Recorded Mail To: A
Ocwen Loan Servicing, LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number: 561-682-8835

Attorney Code:

Regency Process Service, LLC
761 Koehler Avenue
Suite A
Ronkonkoma, NY 11779
Telephone: 631-981-5378
Fax: 631-981-4842

## ASSIGNMENT OF MORTGAGE
## NEW YORK

This ASSIGNMENT OF MORTGAGE from **OPTION ONE MORTGAGE CORPORATION,** whose address is c/o Ocwen Loan Servicing, LLC. 5720 Premier Park Dr, West Palm Beach, FL 33407("Assignor") to **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET INVESTMENT LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-6** whose address is c/o Ocwen Loan Servicing, LLC. 5720 Premier Park Dr, West Palm Beach, FL 33407 ("Assignee").

For the sum of ten dollars ($10.00) cash and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, assign, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the rights, title and interest of said Assignor in and to the following instrument describing land therein, duly recorded in the Office of the County Recorder of **SUFFOLK** County, State of **NEW YORK,** as follows:

Borrower: **AUDREY L. CONKLIN AND JACQUELINE M. CONKLIN**
Lender: **ALLIANCE MORTGAGE BANKING CORP.**
OPB: **$ 341,000.00**
Document Date: **APRIL 09, 2004**
Date Recorded: **SEPTEMBER 14, 2004**
Instrument Number: **CV085482**
Book/Volume/Docket/Liber/Reel: **M00020853**
Page/Folio: **855**
Property Address: **212 LAKE AVENUE, SAINT JAMES, NY 11780**
Property described as follows:
  DISTRICT: **0800**        SECTION: **055.00**        BLOCK: **04.00**        LOT: **014.000**

Said Mortgage was assigned from ALLIANCE MORTGAGE BANKING CORP. to OPTION ONE MORTGAGE CORPORATION by instrument dated SEPTEMBER 19, 2005
and recorded on JANUARY 10, 2007 in Book M00021448 Page 857,.

Prepared by: Joe Simmons
When Recorded Mail To:
Ocwen Loan Servicing, LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number: 561-682-8835

Attorney Code:

If this loan is secured by an interest in a cooperative Apartment, Assignor hereby assigns all of its right, title and interest in and to the Assignment of Lease and Stock Power executed by the borrower(s) in conjunction with the loan.

This Assignment is not subject to the requirement of section two hundred seventy-five (275) and three hundred twenty one (321) of the Real Property Law because it is an assignment within the secondary mortgage market.

This Assignment is made without warranty, express or implied, and without recourse to the Assignor in any event whatsoever.

Dated: JULY 30, 2013

**OPTION ONE MORTGAGE CORPORATION**
**BY ITS ATTORNEY IN FACT**
**OCWEN FEDERAL BANK FSB**
**BY ITS SUCCESSOR IN INTEREST**
**OCWEN LOAN SERVICING, LLC**

BY:

NAME:          Joel Pires
TITLE:  Contract Manager
POA RECORDED DATE: OCTOBER 24, 2005
BOOK: D00012416          PAGE: 55
STATE OF FLORIDA          }
                          } SS.
COUNTY OF PALM BEACH      }

On the 30TH day of JULY, in the year 2013 , before me, the undersigned, personally appeared _____ Joel Pires _____ , of 5720 Premier Park Dr, West Palm Beach, FL 33407, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual(s) or person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the county of Palm Beach, State of Florida.

Witness my hand and official seal.

_____
          Notary —    Janira Walker
          State of Florida

Notary Public State of Florida
Janira Walker
My Commission EE 861713
Expires 12/30/2016

NOTE

212 LAKE AVENUE, ST. JAMES, NY 11780-
[Property Address]

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S.   $341,000.00   (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

ALLIANCE MORTGAGE BANKING CORP., A NEW YORK CORPORATION

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of   6.990%  .

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.  PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on   June 01, 2004   .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on

May 01       , 2034 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   ALLIANCE MORTGAGE BANKING CORP.
3601 HEMPSTEAD TURNPIKE, SUITE 305, LEVITTOWN, NY 11756 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S.   $2,266.39   .

**(C) Application of Payments**

Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

**4.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If within   12 Months       from the date of execution of the Security Instrument I make a full prepayment or, in certain cases a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to six (6) months advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note. In no event will such a charge be made unless it is authorized by state or federal law.

**5.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   2.000%   of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument.

**(C) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**NEW YORK FIXED RATE NOTE** - Single Family
Page 1 of 2

NYNT0011.wp (02-12-02)

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
AUDREY L. CONKLIN                    -Borrower
SSN: ███████

_____ (Seal)
                                    -Borrower
SSN:

_____ (Seal)
                                    -Borrower
SSN:

_____ (Seal)
                                    -Borrower
SSN:

_____ (Seal)
                                    -Borrower
SSN:

_____ (Seal)
                                    -Borrower
SSN:

*(Sign Original Only)*

Loan Number: ▮▮▮▮▮▮       Servicing Number: ▮▮▮▮▮▮       Date: 04/09/04

# ALLONGE TO NOTE
## (CORONE LENDER)

This allonge makes reference to the following Note:

Borrowers: AUDREY L. CONKLIN
Loan #: ▮▮▮▮▮▮
Property Address: 212  LAKE AVENUE,  ST. JAMES, NY 11780-
Loan Amount: $341,000.00

Note Date: 04/09/04

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:        OPTION ONE MORTGAGE CORPORATION,  A CALIFORNIA CORPORATION
Without Recourse

By: ALLIANCE MORTGAGE BANKING CORP., A NEW YORK CORPORATION

_____          _____
Authorized Signer's Name                 Signer's Title

USD3051.wp (03-14-03)

Loan Number: ▆▆▆▆▆▆        Servicing Number: ▆▆▆▆▆▆        Date: 04/09/04

# ALLONGE TO NOTE
## (INVESTOR)

This allonge makes reference to the following Note:

**Borrowers:** AUDREY L. CONKLIN
**Loan #:** ▆▆▆▆▆▆
**Property Address:** 212  LAKE AVENUE,   ST. JAMES, NY 11780-
**Loan Amount:** $341,000.00

Note Date: 04/09/04

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:

Without Recourse

Option One Mortgage Corporation
A California Corporation

By: _____

    Jacklyn Melly

Assistant Secretary

USD3050.wp (03-14-03)

**BALLOON PAYMENT DISCLOSURE**

THIS MODIFICATION AGREEMENT CONVERTS YOUR LOAN INTO A BALLOON LOAN, WHICH MEANS THAT EVEN IF YOU MAKE ALL YOUR SCHEDULED PAYMENTS WHEN DUE, THE LOAN WILL NOT BE PAID IN FULL AT THE END OF ITS TERM (WHICH MAY CHANGE AS IS INDICATED BELOW). AS A RESULT, ON THE MATURITY DATE, YOU WILL BE REQUIRED TO REPAY, IN A SINGLE PAYMENT, THE ENTIRE REMAINING PRINCIPAL BALANCE (THE BALLOON PAYMENT INDICATED IN THE SCHEDULE BELOW) PLUS ALL ACCRUED AND UNPAID INTEREST AND ALL OTHER AMOUNTS OWING ON THAT DATE (INCLUDING BUT NOT LIMITED TO ALL ADVANCES MADE BY LOAN SERVICER UNDER THE TERMS OF THE SECURITY INSTRUMENT).

*CAUTION TO BORROWER· NO OBLIGATION TO REFINANCE* - LENDER OR SERVICER HAS NO OBLIGATION TO REFINANCE THIS LOAN OR MAKE YOU A NEW LOAN ON THE MATURITY DATE IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY TO MAKE THE BALLOON PAYMENT. ASSUMING ANOTHER LENDER MAKES YOU A NEW LOAN ON THE MATURITY DATE, YOU WILL PROBABLY BE CHARGED INTEREST AT THE MARKET RATE PREVAILING AT THAT TIME SUCH INTEREST RATE MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE KEEP THIS IN MIND IN DECIDING WHETHER TO AGREE TO THE TERMS OF THIS LOAN MODIFICATION AGREEMENT.

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"): [1]AUDREY L. CONKLIN
Lender or Servicer ("Lender"): American Home Mortgage Servicing, Inc.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 4/14/2004
Loan Number: 
Property Address ("Property"): 212 LAKE AVENUE,ST. JAMES NY 11780

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations and Covenants**. I certify, represent to Lender, covenant and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3157 3/09 (rev. 9/10) *(page 1 of 6 pages)*

E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G. I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 6/1/2012 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 6/1/2012.

A. The new Maturity Date will be: 5/1/2034.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amount") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $341,874.08 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 2% will begin to accrue on the New Principal Balance as of 5/1/2012, and the first new monthly payment on the New Principal Balance will be due on 6/1/2012. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2% | 5/1/2012 | $1,093.65 | $1,419.74 | $2,513.39 | 6/1/2012 | 60 |
| 6 | 3% | 5/1/2017 | $1,256.03 | May adjust periodically | May adjust periodically | 6/1/2017 | 12 |
| 7-22 | 3.875% | 5/1/2018 | $1,404 30 | May adjust periodically | May adjust periodically | 6/1/2018 | 191 |
| 22 | N/A% | N/A | $191,296.77 | May adjust periodically | $191,296.77 | 5/1/2034 | 1 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.    **Additional Agreements**. I agree to the following:

    A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

    B.  That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

    C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

    D.  That Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge.

Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

_____    _Audrey Conklin_____ (Seal)
American Home Mortgage Servicing, Inc.    AUDREY L. CONKLIN

By: ___James Lytle_____    _5-16-12_____
                                Date

___6/13/2012_____
Date                                    _Nadine Schneider_____

_____ [Space Below This Line For Acknowledgement]    **NADINE SCHNEIDER**
**NOTARY PUBLIC, STATE OF NEW YORK**
**REGISTRATION # 01SC6210549**
**QUALIFIED IN SUFFOLK COUNTY**
**COMMISSION EXP 8/24/2013**

| Nbr | Due Dt | Principal | Interest | P&I | Escrow | Opt Ins | Subsidy | Fees/Exp | Payment | Total Due |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 12/1/2012 | $529.59 | $564.06 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $41.87 | $2,606.89 | $2,648.76 |
| 2 | 1/1/2013 | $530.47 | $563.18 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $21.87 | $2,606.89 | $5,277.52 |
| 3 | 2/1/2013 | $531.36 | $562.29 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $21.87 | $2,606.89 | $7,906.28 |
| 4 | 3/1/2013 | $532.24 | $561.41 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $21.87 | $2,606.89 | $10,535.04 |
| 5 | 4/1/2013 | $533.13 | $560.52 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $21.87 | $2,606.89 | $13,163.80 |
| 6 | 5/1/2013 | $534.02 | $559.63 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $15,770.69 |
| 7 | 6/1/2013 | $534.91 | $558.74 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $18,377.58 |
| 8 | 7/1/2013 | $535.80 | $557.85 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $20,984.47 |
| 9 | 8/1/2013 | $536.69 | $556.96 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $23,591.36 |
| 10 | 9/1/2013 | $537.59 | $556.06 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $26,198.25 |
| 11 | 10/1/2013 | $538.48 | $555.17 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $28,805.14 |
| 12 | 11/1/2013 | $539.38 | $554.27 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $31,412.03 |
| 13 | 12/1/2013 | $540.28 | $553.37 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $34,018.92 |
| 14 | 1/1/2014 | $541.18 | $552.47 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $36,625.81 |
| 15 | 2/1/2014 | $542.08 | $551.57 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $39,232.70 |
| 16 | 3/1/2014 | $542.99 | $550.66 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $41,839.59 |
| 17 | 4/1/2014 | $543.89 | $549.76 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $44,446.48 |
| 18 | 5/1/2014 | $544.80 | $548.85 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $47,053.37 |
| 19 | 6/1/2014 | $545.71 | $547.94 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $49,660.26 |
| 20 | 7/1/2014 | $546.61 | $547.04 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $52,267.15 |
| 21 | 8/1/2014 | $547.53 | $546.12 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $54,874.04 |
| 22 | 9/1/2014 | $548.44 | $545.21 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $57,480.93 |
| 23 | 10/1/2014 | $549.35 | $544.30 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $60,087.82 |
| 24 | 11/1/2014 | $550.27 | $543.38 | $1,093.65 | $1,513.24 | $0.00 | $0.00 | $0.00 | $2,606.89 | $62,694.71 |
| 25 | 12/1/2014 | $551.19 | $542.46 | $1,093.65 | $1,704.68 | $0.00 | $0.00 | $0.00 | $2,798.33 | $65,493.04 |
| 26 | 1/1/2015 | $552.10 | $541.55 | $1,093.65 | $1,704.68 | $0.00 | $0.00 | $0.00 | $2,798.33 | $68,291.37 |
| 27 | 2/1/2015 | $553.02 | $540.63 | $1,093.65 | $1,704.68 | $0.00 | $0.00 | $0.00 | $2,798.33 | $71,089.70 |
| 28 | 3/1/2015 | $553.95 | $539.70 | $1,093.65 | $1,704.68 | $0.00 | $0.00 | $0.00 | $2,798.33 | $73,888.03 |
| 29 | 4/1/2015 | $554.87 | $538.78 | $1,093.65 | $1,704.68 | $0.00 | $0.00 | $0.00 | $2,798.33 | $76,686.36 |
| 30 | 5/1/2015 | $555.79 | $537.86 | $1,093.65 | $1,704.68 | $0.00 | $0.00 | $0.00 | $2,798.33 | $79,484.69 |
| 31 | 6/1/2015 | $556.72 | $536.93 | $1,093.65 | $1,704.68 | $0.00 | $0.00 | $0.00 | $2,798.33 | $82,283.02 |
| 32 | 7/1/2015 | $557.65 | $536.00 | $1,093.65 | $1,704.68 | $0.00 | $0.00 | $0.00 | $2,798.33 | $85,081.35 |
| 33 | 8/1/2015 | $558.58 | $535.07 | $1,093.65 | $1,704.68 | $0.00 | $0.00 | $0.00 | $2,798.33 | $87,879.68 |
| 34 | 9/1/2015 | $559.51 | $534.14 | $1,093.65 | $1,704.68 | $0.00 | $0.00 | $0.00 | $2,798.33 | $90,678.01 |
| 35 | 10/1/2015 | $560.44 | $533.21 | $1,093.65 | $1,704.68 | $0.00 | $0.00 | $0.00 | $2,798.33 | $93,476.34 |
| 36 | 11/1/2015 | $561.37 | $532.28 | $1,093.65 | $1,723.21 | $0.00 | $0.00 | $0.00 | $2,816.86 | $96,293.20 |
| 37 | 12/1/2015 | $562.31 | $531.34 | $1,093.65 | $1,723.21 | $0.00 | $0.00 | $0.00 | $2,816.86 | $99,110.06 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 38 | 1/1/2016 | $563.25 | $530.40 | $1,093.65 | $1,723.21 | $0.00 | $0.00 | $0.00 | $2,816.86 | $101,926.92 |
| 39 | 2/1/2016 | $564.19 | $529.46 | $1,093.65 | $1,723.21 | $0.00 | $0.00 | $0.00 | $2,816.86 | $104,743.78 |
| 40 | 3/1/2016 | $565.13 | $528.52 | $1,093.65 | $1,723.21 | $0.00 | $0.00 | $0.00 | $2,816.86 | $107,560.64 |
| 41 | 4/1/2016 | $566.07 | $527.58 | $1,093.65 | $1,723.21 | $0.00 | $0.00 | $0.00 | $2,816.86 | $110,377.50 |
| 42 | 5/1/2016 | $567.01 | $526.64 | $1,093.65 | $1,723.21 | $0.00 | $0.00 | $0.00 | $2,816.86 | $113,194.36 |
| 43 | 6/1/2016 | $567.96 | $525.69 | $1,093.65 | $1,723.21 | $0.00 | $0.00 | $0.00 | $2,816.86 | $116,011.22 |
| 44 | 7/1/2016 | $568.90 | $524.75 | $1,093.65 | $1,723.21 | $0.00 | $0.00 | $0.00 | $2,816.86 | $118,828.08 |
| 45 | 8/1/2016 | $569.85 | $523.80 | $1,093.65 | $1,723.21 | $0.00 | $0.00 | $0.00 | $2,816.86 | $121,644.94 |
| 46 | 9/1/2016 | $570.80 | $522.85 | $1,093.65 | $1,723.21 | $0.00 | $0.00 | $0.00 | $2,816.86 | $124,461.80 |
| 47 | 10/1/2016 | $571.75 | $521.90 | $1,093.65 | $1,723.21 | $0.00 | $0.00 | $0.00 | $2,816.86 | $127,278.66 |
| 48 | 11/1/2016 | $572.71 | $520.94 | $1,093.65 | $1,687.78 | $0.00 | $0.00 | $0.00 | $2,781.43 | $130,060.09 |
| 49 | 12/1/2016 | $573.66 | $519.99 | $1,093.65 | $1,680.60 | $0.00 | $0.00 | $0.00 | $2,774.25 | $132,834.34 |
| 50 | 1/1/2017 | $574.62 | $519.03 | $1,093.65 | $1,680.60 | $0.00 | $0.00 | $0.00 | $2,774.25 | $135,608.59 |
| 51 | 2/1/2017 | $575.57 | $518.08 | $1,093.65 | $1,680.60 | $0.00 | $0.00 | $0.00 | $2,774.25 | $138,382.84 |
| 52 | 3/1/2017 | $576.53 | $517.12 | $1,093.65 | $1,680.60 | $0.00 | $0.00 | $0.00 | $2,774.25 | $141,157.09 |
| 53 | 4/1/2017 | $577.49 | $516.16 | $1,093.65 | $1,680.60 | $0.00 | $0.00 | $0.00 | $2,774.25 | $143,931.34 |
| 54 | 5/1/2017 | $578.46 | $515.19 | $1,093.65 | $1,680.60 | $0.00 | $0.00 | $0.00 | $2,774.25 | $146,705.59 |
| 55 | 6/1/2017 | $484.69 | $771.34 | $1,256.03 | $1,680.60 | $0.00 | $0.00 | $0.00 | $2,936.63 | $149,642.22 |
| 56 | 7/1/2017 | $485.90 | $770.13 | $1,256.03 | $1,680.60 | $0.00 | $0.00 | $0.00 | $2,936.63 | $152,578.85 |
| 57 | 8/1/2017 | $487.11 | $768.92 | $1,256.03 | $1,680.60 | $0.00 | $0.00 | $0.00 | $2,936.63 | $155,515.48 |
| 58 | 9/1/2017 | $488.33 | $767.70 | $1,256.03 | $1,680.60 | $0.00 | $0.00 | $0.00 | $2,936.63 | $158,452.11 |
| 59 | 10/1/2017 | $489.55 | $766.48 | $1,256.03 | $1,680.60 | $0.00 | $0.00 | $0.00 | $2,936.63 | $161,388.74 |
| 60 | 11/1/2017 | $490.78 | $765.25 | $1,256.03 | $1,680.60 | $0.00 | $0.00 | $0.00 | $2,936.63 | $164,325.37 |
| 61 | 12/1/2017 | $492.00 | $764.03 | $1,256.03 | $1,626.07 | $0.00 | $0.00 | $0.00 | $2,882.10 | $167,207.47 |
| 62 | 1/1/2018 | $493.23 | $762.80 | $1,256.03 | $1,626.07 | $0.00 | $0.00 | $0.00 | $2,882.10 | $170,089.57 |
| 63 | 2/1/2018 | $494.47 | $761.56 | $1,256.03 | $1,626.07 | $0.00 | $0.00 | $0.00 | $2,882.10 | $172,971.67 |
| 64 | 3/1/2018 | $495.70 | $760.33 | $1,256.03 | $1,626.07 | $0.00 | $0.00 | $0.00 | $2,882.10 | $175,853.77 |
| 65 | 4/1/2018 | $496.94 | $759.09 | $1,256.03 | $1,626.07 | $0.00 | $0.00 | $0.00 | $2,882.10 | $178,735.87 |
| 66 | 5/1/2018 | $498.18 | $757.85 | $1,256.03 | $1,626.07 | $0.00 | $0.00 | $0.00 | $2,882.10 | $181,617.97 |
| 67 | 6/1/2018 | $427.02 | $977.28 | $1,404.30 | $1,626.07 | $0.00 | $0.00 | $0.00 | $3,030.37 | $184,648.34 |
| 68 | 7/1/2018 | $428.40 | $975.90 | $1,404.30 | $1,626.07 | $0.00 | $0.00 | $0.00 | $3,030.37 | $187,678.71 |
| 69 | 8/1/2018 | $429.79 | $974.51 | $1,404.30 | $1,626.07 | $0.00 | $0.00 | $0.00 | $3,030.37 | $190,709.08 |
| 70 | 9/1/2018 | $431.17 | $973.13 | $1,404.30 | $1,626.07 | $0.00 | $0.00 | $0.00 | $3,030.37 | $193,739.45 |
| 71 | 10/1/2018 | $432.57 | $971.73 | $1,404.30 | $1,626.07 | $0.00 | $0.00 | $0.00 | $3,030.37 | $196,769.82 |
| 72 | 11/1/2018 | $433.96 | $970.34 | $1,404.30 | $1,626.07 | $0.00 | $0.00 | $0.00 | $3,030.37 | $199,800.19 |
| 73 | 12/1/2018 | $435.36 | $968.94 | $1,404.30 | $1,667.19 | $0.00 | $0.00 | $0.00 | $3,071.49 | $202,871.68 |
| 74 | 1/1/2019 | $436.77 | $967.53 | $1,404.30 | $1,667.19 | $0.00 | $0.00 | $0.00 | $3,071.49 | $205,943.17 |
| 75 | 2/1/2019 | $438.18 | $966.12 | $1,404.30 | $1,667.19 | $0.00 | $0.00 | $0.00 | $3,071.49 | $209,014.66 |

| | |
|---|---|
| Total payment due | $208,885.31 |